IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PEGGY KELTNER, JEROME and
BEVERLY JOHNSON, MELINDA
DUNIPHAN and SHELBY SIEBERT,

      PlaintiffS,                      No.   3:14-cv-01374-DRH-PMF

vs.

SUNCOKE ENERGY, INC., GATEWAY
ENERGY & COKE COMPANY, LLC and
UNITED STATES STEEL
CORPORATION
      Defendants.

## MEMORANDUM AND ORDER

HERNDON, District Judge:

## I. INTRODUCTION

Plaintiffs, Illinois citizens, filed this class action in state court asserting claims for temporary nuisance, trespass, and negligence against defendants SunCoke Energy, Inc ("SunCoke"), Gateway Energy Coke Company, LLC ("GECC"), and United States Steel Corporation ("US Steel"). Plaintiffs' complaint is based on the defendants' alleged contamination of their property through operation of a GECC facility and Steel mill located in Granite City, Illinois. Plaintiffs claim that operation of the Granite City facility regularly releases substantial amounts of particles that leave a silty deposit on nearby residents' properties and enter into nearby homes.

There is no interstate component to the present action. Rather, the putative

class representatives are Illinois citizens, asserting common law tort claims, against an alleged source of pollution located in Illinois.

Defendants SunCoke and GECC removed the case, asserting the Class Action Fairness Act of 2005 ("CAFA") and federal question as the bases for jurisdiction (Doc. 2). As to federal question jurisdiction, defendants' removal papers note plaintiffs' complaint references a lawsuit initiated by the Environmental Protection Agency against two of the defendants. The lawsuit involved conduct that allegedly violated a permit issued to GECC under the federal Clean Air Act.

The plaintiffs have filed a motion to remand (Doc. 19). Plaintiffs do not dispute that defendants have satisfied CAFA's requirements of diversity of citizenship, a proposed class composed more than 100 members, and an amount in controversy in excess of $5,000,000, but argue that this case falls within CAFA's "local controversy exception." 18 U.S.C. § 1332(d)(4)(A) (setting forth the local controversy exception). With regard to original jurisdiction, plaintiffs assert that they are only pursuing claims arising under state law.

SunCoke and GECC filed a response to plaintiffs' motion to remand (Doc. 23). SunCoke and GECC focus on the issues pertaining to CAFA.[1] US Steel has also filed a response (Doc. 25). US Steel's responsive brief addresses federal question jurisdiction. Plaintiffs have also filed a reply (Doc. 31).

## II. REMOVAL - STANDARD

_____

[1] In a footnote, SunCoke and GECC maintain the Court has federal question jurisdiction for the reasons provided in their removal papers and join in US Steel's motion to remand.

A defendant may remove a case filed in state court if the federal court would have had original jurisdiction to hear the case when the plaintiff originally filed it. 28 U.S.C. § 1441(a); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur*, 577 F.3d at 758 (*citing Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)).

### III. FEDERAL QUESTION JURISDICTION

**A. The Parties' Arguments**

In their notice of removal, SunCoke and GECC allege plaintiffs' claims arise under federal law because plaintiffs' complaint references a lawsuit filed by the Environmental Protection Agency related to emissions from the Granite City Facility. SunCoke and GECC allege this lawsuit implicates the Clean Air Act and a consent decree issued by the Southern District of Illinois (as a result of the referenced lawsuit). In their motion to remand, the plaintiffs acknowledge the complaint references the lawsuit and the resultant consent decree, but insist they are not pursuing any claims for violations of the Clean Air Act or any other federally based claims. Instead, the plaintiffs state they are only pursuing common law claims of nuisance, trespass and negligence under state law.

In its responsive brief, US Steel insists federal question jurisdiction exists. Although the briefing is not entirely clear and the argument is not fully developed,

US Steel appears to be presenting three alternative arguments related to federal question jurisdiction: (1) the face of the complaint asserts federally based claims because plaintiffs' causes of action do not expressly reference state law; (2) nuisance claims involving ambient air necessarily arise under federal law; and/or (3) plaintiffs' claims are wholly displaced by the Clean Air Act.[2]

The Court addresses the above arguments in turn below.

## B. Federal Claims are Not Asserted on the Face of the Complaint

Federal question jurisdiction lies over state law claims that implicate significant issues of federal law. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). Federal question jurisdiction does not merely exist when federal law applies; rather there must be an actual dispute regarding federal law. *Id.* at 315 n. 3.

In order to determine the scope of Plaintiffs' claims, the Court employs the well-pleaded-complaint-rule:

> Ordinarily, a court must determine the presence or absence of a federal question by examining only the plaintiff's well-pleaded complaint. This rule requires that a federal question appear on the face of the complaint. The plaintiff, as the master of his own complaint, may avoid federal jurisdiction by pleading only state-law claims.

*Nelson v. Stewart*, 422 F.3d 463, 466 (7th Cir. 2005) (internal citations omitted)[3]

---

[2]   The Court notes US Steel devotes a portion of its responsive brief to providing the Court with a "bird's eye" view/history of the Granite City facility and addressing the procedural aspects of removal (a matter US Steel acknowledges is *not* in issue in the instant case). US Steel, however, fails to fully develop the arguments that are central to the issue of federal question jurisdiction. For this reason alone US Steel has not met its burden of establishing that jurisdiction is proper. Nonetheless, the Court addresses the arguments it is able to discern from the briefing provided.
[3]   An exception to the well-pleaded-complaint-rule is when federal law completely preempts a

The plaintiffs' complaint does not reference any law – state or federal. Plaintiffs merely assert common law claims for nuisance, trespass and negligence without further specification. Defendants assert because plaintiffs' complaint fails to characterize its causes of action as based on state rather than federal law, federal question jurisdiction exists. For the purpose of addressing this argument, the Court assumes without deciding that private citizens can assert nuisance claims against private entities relating to localized pollution under federal common law.

Defendants have not identified any authority requiring the plaintiffs to bring their common law claims under federal rather than state law.[4] Defendants argue, nonetheless, the ambiguity in plaintiffs' complaint must be resolved in favor of applying federal law. Defendants' argument is unpersuasive. Here, defendants have the burden of establishing federal jurisdiction and the Court must resolve any doubt in favor of applying state law. *Schur*, 577 F.3d at 758 (*citing Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). Accordingly, the Court will credit plaintiffs' statement in their motion to remand that they are only asserting state law claims. *See Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) (stating "the party who brings a suit is master to decide what law he will rely on.");

---

particular area and, regardless of any artful pleading on the part of the plaintiff, renders the complaint necessarily federal in character. *Bastien v. AT & T Wireless Services, Inc.*, 205 F.3d 983, 986 (7th Cir. 2000); *See Hays v. Cave*, 446 F.3d 712, 713 (7th Cir.2006) (stating "if federal law creates the claim on which the plaintiff is suing, the fact that he has omitted from his complaint any reference to federal law will not defeat removal"). The issue of complete preemption is discussed more fully below.

[4] US Steel contends cases involving ambient air are governed by federal common law. For reasons discussed below, the Court finds the instant case is distinguishable from *Michigan v. US Army Corps of Engineers* 758 F.3d 892 (7th Cir. 2014), On plaintiffs' motion to remand, ambiguity must be resolved in favor of applying state law. Accordingly, the Court finds *Michigan v. US Army Corps of Engineers* does not require application of federal law in the instant case.

*See also Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 810 n. 6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced."); *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir.1996) (stating that "if she can maintain her claims on both state and federal grounds, she may ignore the federal question, assert only state claims, and defeat removal"). Further, the Court finds the plaintiffs' passing reference to the lawsuit initiated by the Environmental Protection Agency and the resultant consent decree is insufficient to sustain federal question jurisdiction.

**B. *Michigan v. US Army Corps of Engineers* Does Not Require Application of Federal Law**

The Court next considers the defendants' argument with regard to federal common law and ambient air. Defendants urge *Michigan v. US Army Corps of Engineers* 758 F.3d 892 (7th Cir. 2014), requires a finding of federal question jurisdiction on the theory that plaintiffs' claims arise under the federal common law dealing with ambient air.

In *Michigan v. US Army Corps of Engineers,* the Seventh Circuit acknowledged, in the context of an interstate nuisance involving governmental entities and federal rights, there is a federal common law when dealing with air and water in their ambient or interstate aspects. However, the Court notes that at least four important factors were present in *Michigan v. US Army Corps of Engineers* that are not present here. The first is the fact that the plaintiffs were governmental entities (five states and an Indian tribe); the second was the interstate nature of the

nuisance involved (the threat posed to Great Lakes by an invasive carp species); the third was the fact that one of the defendants was an agency of the federal government (the Army Corps of Engineers); and the fourth was the fact that the plaintiffs were actually seeking to pursue federal common law claims.

In the instant case, private plaintiffs are asserting state common law claims against private entities. Moreover, the alleged harm is local and does not – in any way – involve an interstate nuisance. Given these significant differences, the Court is not persuaded that *Michigan v. US Army Corps of Engineers* requires a finding of federal question jurisdiction. As the Court must resolve any doubt in favor of applying state law, the Court concludes *Michigan v. US Army Corps of Engineers* does not mandate application of federal law in the instant case.[5]

## C. Defendants Have Failed to Establish Complete Preemption Over Plaintiffs' State Law Claims

Finally, the Court considers the defendants' argument as to whether federal law wholly displaces plaintiffs' state law claims.[6] Generally, the "well-pleaded complaint" doctrine guides jurisdictional matters. *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936). The "allegations of the complaint determine whether the claim arises under state or federal law," making

---

[5] *See also Michigan v. US Army Corps of Engineers,* 667 F.3d 765, 770 (7th Cir. 2011) (discussing *American Electric Power* and the federal common law "in areas within national legislative power" and discussing the need "for a federal common law to govern *interstate* disputes over nuisances") (emphasis added).

[6] US Steel does not expressly reference complete preemption of plaintiffs' state law claims. Instead, US Steel asserts defendants are entitled to have the Court determine whether the "Clean Air Act has displaced any federal common law claims in the Complaint" (Doc. 25 p. 5). However, the complaint does not assert any federal common law claims. The only displacement finding that would authorize removal is a finding that federal law wholly displaces plaintiffs' state law claims through *complete* preemption. Accordingly, the Court considers the question of complete preemption of plaintiffs' state law claims.

the plaintiff "master of his pleadings." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1075 (7th Cir. 1992); *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Ordinarily, federal preemption is a defense to a plaintiff's suit and, as such, does not authorize removal because it does not appear on the face of the complaint. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Bartholet*, 953 F.2d at 1075. An exception to both rules exists "when a federal statute wholly displaces the state law cause of action through complete pre-emption … [such that] a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S.Ct. 2058, 2063, 156 L.Ed.2d 1 (2003); *see also Turek v. General Mills, Inc.*, 662 F.3d 423, 425 (7th Cir. 2011). In such a case, the "federal law so fills every nook and cranny that it is not possible to frame a complaint under state law." *Bartholet*, 953 F.2d at 1075.

In cases of complete preemption, a defendant may remove the claim to district court pursuant to 28 U.S.C. § 1441(a) because the district court has original jurisdiction of the claim as it "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *Davila*, 542 U.S. at 207, 124 S.Ct. at 2495. As previously noted, a defendant bears the "burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. LA Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

Here, defendants briefly argue plaintiffs' claims are wholly displaced by the Clean Air Act and cite to *American Electric Power Co. v. Connecticut*, 131 S.Ct. 2527 (2011). In this case, the Supreme Court held *federal* common law was preempted by the Clean Air Act. It specifically reserved the issue of state common law for the court on remand. *American Electric,* 131 S.Ct. at 2540.[7]

Additionally, the Court notes certain provisions in the Clean Air Act militate against a finding of complete preemption. First, in enacting the Clean Air Act, Congress found "that air pollution prevention (that is the reduction or elimination, through any measures, of the amount of pollutants produced or created at the source) and air pollution control at its source is the primary responsibility of States and local governments." 42 U.S.C. § 7401(a)(3). Second, Congress included two specific savings clauses which indicate Congress intended to preserve the right to bring suit under the law of any affected State: the citizen suit savings clause and the states' rights savings clause. These provisions indicate Congress intended to preserve state law tort actions.

Finally, in the absence of Seventh Circuit authority to the contrary, the Court is persuaded by the reasoning of the Third Circuit Court of Appeals on this matter.

---

[7] On this issue, the Supreme Court stated as follows:

> The plaintiffs also sought relief under state law, in particular, the law of each State where the defendants operate power plants. The Second Circuit did not reach the state law claims because it held that federal common law governed. In light of our holding that the Clean Air Act displaces federal common law, the availability vel non of a state lawsuit depends, inter alia, on the preemptive effect of the federal Act. None of the parties have briefed preemption or otherwise addressed the availability of a claim under state nuisance law. We therefore leave the matter open for consideration on remand.

*American Electric,* 131 S.Ct. at 2540 (internal citations omitted).

*See Bell v. Cheswick Generating Station* 734 F.3d 188 (3rd Cir. 2013). In *Bell*, the putative class (at least 1,500 individuals who owned or inhabited residential property within one mile of defendant's coal-fired electrical generation facility) complained of ash and contaminants settling on their property. The putative class brought suit against the defendant under various state law tort theories.[8] The district court dismissed the case finding the Clean Air Act preempted the plaintiffs' state law tort claims and the plaintiffs appealed. On appeal, the Third Circuit considered, "as a matter of first impression: whether the Clean Air Act Preempt[ed] state law tort claims brought by private property owners against a source of pollution located within the state." *Id.* at 189. After conducting a thorough analysis, the Third Circuit concluded "the Clean Air Act does not preempt state common law claims based on the law of the state where the source of the pollution is located. Accordingly, the suit here, brought by Pennsylvania residents under Pennsylvania law against a source of pollution located in Pennsylvania, is not preempted." *Id.* at 197. The Third Circuit also noted that the Supreme Court's decision in *American Electric* did *not* alter the court's analysis. *Id.* n.7.

Based on the foregoing, the Court finds plaintiffs' state common law causes of action are not completely preempted by the Clean Air Act. Accordingly, this argument does not provide a basis for federal question jurisdiction.

## IV.   LOCAL CONTROVERSY EXCEPTION

---

[8] The case was originally filed in state court and removed to federal court based on diversity of citizenship. *Bell v. Cheswick Generating Station,* 903 F.Supp.2d 314, 315 (W.D. Pa. 2012). Thereafter, the defendant sought dismissal for failure to state a claim.

While plaintiffs concede this case comes under CAFA generally, they argue it falls under the local controversy exception to CAFA. Under the local controversy exception, a district court *must* decline to exercise jurisdiction over a class action in which:

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant—

(aa) from whom significant relief is sought by members of the plaintiff class;
(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3–year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(d)(4)(A)(i)(I)-(III). The local controversy exception is "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 682 (7th Cir. 2006).

It is the plaintiffs who bear the burden of establishing, by a preponderance of the evidence, that the local controversy exception applies and that the federal court

must remand the action to the state court. *In re Sprint Nextel Corp.*, 593 F.3d 669, 673, 673 (7th Cir. 2010); *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 676 (7th Cir. 2006).

In the instant case, the only element disputed by the parties is whether the plaintiffs have established that greater than two-thirds of the proposed class members are citizens of Illinois.

Citizenship means domicile, which is where the person (1) resides and (2) intends to remain. *Myrick v. Wellpoint, Inc.,* 764 F.3d 662, 664 (7th Cir. 2014). In assessing the issue of citizenship, the court may not draw conclusions about the citizenship of class members on things like their phone numbers and mailing addresses." *In re Sprint Nextel Corp.*, 593 F.3d 669, 673, 674 (7th Cir. 2010). The Seventh Circuit has explained such conclusions are nothing more than guesswork and should not be relied upon. *See Id.* (drawing conclusions about citizenship based on phone numbers and mailing addresses is "[s]ensible guesswork, based on a sense of how the world works, but guess-work nonetheless").

Instead, of engaging in this type of guesswork, the Seventh Circuit has endorsed the following two approaches:

> For starters, ... they might have submitted evidence that two-thirds of the class members were indeed Kansas domiciliaries or businesses. Given that there are probably hundreds of thousands of putative class members, if not more, it would be infeasible to document each class member's citizenship individually, but the district court could have relied on evidence going to the citizenship of a representative sample. This evidence might have included affidavits or survey responses in which putative class members reveal whether they intend to remain in Kansas indefinitely, or, if they are businesses, their citizenship under

the relevant test. Given those results and the size of the sample and the estimated size of the proposed class, the district court could then have used statistical principles to reach a conclusion as to the likelihood that two-thirds or more of the proposed class members are citizens of Kansas. Statisticians and scientists usually want at least 95 percent certainty, but any number greater than 50 percent would have allowed the district court to conclude that the plaintiffs had established the citizenship requirement by a preponderance of the evidence.

Alternatively, the plaintiffs might have defined their class as all Kansas citizens who purchased text messaging from Sprint Nextel or an alleged coconspirator....

*Id.* at 675-76 (assessing how plaintiffs might have established the citizenship requirement with regard to CAFA's "home state" exception).

The Seventh Circuit revisited this issue in *Myrick v. WellPoint, Inc.,* 764 F.3d 662 (7th Cir. 2014). In *Myrick*, plaintiffs sought to certify a proposed class that "would exceed 20,000 policyholders and group members." *Phillips v. Wellpoint, Inc.,* 2010 WL 4877718, *2 (S.D. Ill. Nov. 23, 2010) (Gilbert, J.) (not reported). The district court declined to certify the class and ruled in defendants' favor on the merits (for the second time).[9] On appeal, plaintiffs' counsel contended, among other things, that proving the citizenship of all class members for the purpose of

---

[9] *Myrick v. WellPoint, Inc.,* 764 F.3d 662 (7th Cir. 2014), is an appeal related to plaintiffs' counsel's second attempt to certify a class. The same counsel, making the same substantive allegations, previously attempted to certify a class. *Cima v. WellPoint Health Networks, Inc.,* 250 F.R.D. 374 (S.D.Ill. 2008). The district court declined and later entered judgment against plaintiffs on the merits. Because the initial action had not been certified as a class action, the district court's judgment bound only the named plaintiffs. Counsel then filed a new class action in state court which was removed to the Southern District of Illinois. *Phillips v. WellPoint, Inc.,* 2010 WL 4877718, 2010 U.S. Dist. LEXIS 123844 (S.D.Ill. Nov. 23, 2010) (Gilbert, J.). The district court again declined to certify a class, *Phillips v. WellPoint, Inc.,* 2012 WL 4904523, 2012 U.S. Dist. LEXIS 147736 (S.D.Ill. Oct. 15, 2012) (Gilbert, J), and again ruled in defendants' favor on the merits, *Phillips v. WellPoint, Inc.,* 2012 WL 6111405, 2012 U.S. Dist. LEXIS 175405 (S.D.Ill. Dec. 10, 2012) (Gilbert, J). At that time appeals were taken by plaintiff Bob Myrick concerning all issues and by plaintiff Charlotte Philips concerning the district courts award of costs. *Myrick v. WellPoint, Inc.,* 764 F.3d 662 (7th Cir. 2014).

establishing an exception to CAFA was too expensive. Responding to this argument, the Seventh Circuit made the following observations:

> Not that it would have been prohibitively costly to offer evidence. Counsel for the proposed class assumed that there were only two options: determine the citizenship of every policyholder (expensive) or rely on assumptions (cheap). But there's at least one more option: take a random sample of policyholders (100, say), ascertain the citizenship of each of these on the date the case was removed, and extrapolate to the class as a whole. If the sample yields a lopsided result (say, 90% Illinois citizens or only 50% Illinois citizens) then the outcome is clear without the need for more evidence. (The more lopsided the result, the smaller the sample needed to achieve statistical significance.) If the result is close to the statutory two-thirds line, then do more sampling and hire a statistician to ensure that the larger sample produces a reliable result. Nothing of the kind was done, however, and on an empty record the district court was entitled to conclude that § 1332(d)(4) has not been satisfied.

*Myrick,* 764 F.3d at 665. Although the Appellate Court's comments are *dicta*, they offer additional guidance on issues presently before the Court.

In the instant case, the plaintiffs offer the following as support for their position on the citizenship of the proposed class members: (1) By definition,[10] the proposed class members must reside or have recently resided in Illinois; (2) declarations from 181 putative class members, each attesting to the fact that they currently reside and intend to remain in Illinois; and (3) a declaration from Dr. Charles Cowan, an expert statistician, concluding that more than two-thirds of the class members reside in Illinois and intend to remain there. As to the declaration from Dr. Cowan, Dr. Cowan studied the class area and surveyed a random sample

---

[10] Class members are limited to people that resided (termed "Occupants" in the class definition) in the contaminated area of Madison County, Illinois for the past five years up to and including the present.

of class members. Dr. Cowan concluded that, with 95% certainty, more than two-thirds of the class members reside in Illinois and intend to remain there. More specifically, Dr. Cowan concluded that only 2.8 – 12.4% of putative class area intend to move from Illinois.

Defendants contend the putative class member declarations represent a tiny and potentially non-representative portion of the putative class members. In addition, the defendants fault Dr. Cowan's survey methodology. Defendants also submit a competing declaration from Dr. Jessica B. Horewitz, an economist. In reply, the plaintiffs note that Dr. Horewitz is an economist and contend she has limited to no experience designing surveys and a limited understanding of demographics. Plaintiffs also submit an additional report from Dr. Cowan addressing the criticisms raised in Dr. Horewitz's report.

The Court concludes the survey employed by Dr. Cowan was sufficiently well-designed to yield data that satisfies the preponderance of the evidence standard. Likewise, the putative class member declarations submitted by the plaintiffs adequately support their position. Although the methodology employed by Dr. Cowan is not without flaw and additional information may have been helpful, the material presented by plaintiffs is sufficient to meet the preponderance of the evidence standard. Accordingly, the Court finds that the plaintiffs have sufficiently established that two-thirds of the proposed class members are Illinois citizens.

## V. CONCLUSION

The Court finds the plaintiffs' claims are not wholly preempted under federal

law and the defendants have otherwise failed to meet their burden with respect to establishing federal question jurisdiction. Further, although the action was properly removed under CAFA, the Court finds that plaintiffs have met their burden with respect to the local controversy exception. As no other basis for subject matter jurisdiction exists, this matter must be remanded. Therefore, the Court **ORDERS**

as follows:

This motion to remand is **GRANTED**. The Court **ORDERS** this case remanded to the Circuit Court for the Third Judicial Circuit, Madison County, Illinois.

**IT IS SO ORDERED.**

Signed this 26th day of May 2015.

Digitally signed
by David R.
Herndon
Date: 2015.05.26
13:36:52 -05'00'

**United States District Court**